**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAI WANG,<br><br>　　　Petitioner,<br><br>　　v.<br><br>CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>　　　Respondent. | Case No.:  3:26-cv-01130-BTM-BJW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF NO. 1]** |

Pending before the Court is Kai Wang's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the petition and orders Wang's immediate release from custody.

## I.　BACKGROUND

Wang arrived at the U.S. border on June 13, 2024.  (ECF No. 6-1, Ex. A ("Decl."), ¶ 1.)  He turned himself in to immigration officials, who detained him for four days.  (*Id.*)  He was released into the country on June 17, 2024, and ordered to report to Immigration and Customs Enforcement ("ICE") every six months.  (*Id.* ¶ 1–2.)  Wang reported as ordered.  (*Id.* ¶ 2.)  Later, Wang applied for asylum and attended his first court hearing in April 2025.  (*Id.* ¶ 7.)

On November 29, 2025, Wang was working as a driver for Uber.  (*Id.* ¶ 3.)  He picked up two soldiers and drove them to a military base in Oceanside, CA.  When they arrived, Wang was asked by the base officials to identify himself.  (*Id.*)  Once they discovered that he was not a permanent resident, they sent him to an ICE office.  (*Id.*)  A Chinese-speaking officer told Wang, "This is not Biden time. It's Trump time. If you don't have a green card, you are going to be sent to do a quick proceeding."  (*Id.*)  He was then arrested.  (*Id.* ¶ 3–4.)  He was not provided paperwork that explained the reasons for his redetention.  (*Id.* ¶ 4.)  Although an officer showed "something" to Wang on a cell phone, Wang did not understand because he reads "very little English."  (*Id.* ¶ 4, 6.)  When Wang tried to explain that he shouldn't be arrested, they replied that he was "resisting arrest," which "scared" Wang into silence.  (*Id.* ¶ 8.)

Wang remains in detention.  (*See id.* ¶ 9.)  He filed a petition for the writ of habeas corpus on February 19, 2026, and an amended petition on March 6, 2026.  (ECF No. 1; ECF No. 6 ("Am. Pet.").)

## II.    DISCUSSION

The Petitioner makes two claims.  First, he argues that the Respondent violated the Administrative Procedures Act ("APA") when he improperly revoked the Petitioner's humanitarian parole.  (Am. Pet., 3–5.)  Second, he argues that the Respondent violated the Due Process Clause of the Fifth Amendment by revoking the Petitioner's parole without notice and an opportunity to be heard.  (*Id.* at 10–15.)  The Petitioner requests that the Court grant him release on either claim.  The Respondent contends that the Petitioner is entitled only to a bond hearing under 8 U.S.C. § 1226(a).  (ECF No. 7 ("Return"), at 2.)  The Court addresses each argument in turn.

### A.    Types of Parole

Before deciding whether the Petitioner's parole was improperly revoked, the Court must determine whether the Petitioner received parole.  Under the Immigration and Nationality Act, an applicant for admission into the country may be given parole "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

26-cv-1130

Applicants may also be "released on their own recognizance," which typically refers to conditional parole under 8 U.S.C. § 1226(a). *See Besalti v. LaRose*, 2026 WL 242042, at *2 (S.D. Cal. Jan. 29, 2026); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007) ("[The Petitioner] was conditionally paroled under the authority of § 1226(a) rather than paroled into the United States under the authority of § 1182(d)(5)(A).") An applicant given conditional parole may be "subject to certain conditions such as reporting requirements." *J.S.H.M v. Wofford*, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). The decision to provide parole is "discretionary and is made on a case-by-case basis." *Id.*

Although the Court finds that the Petitioner received parole, it cannot determine the type of parole he received. Rather than detain the Petitioner, the ICE exercised its discretion to release him into the country four days after his arrival. The Petitioner also reported semiannually to ICE while living in the country for almost a year and a half. This appears not to be mandatory detention that "people caught immediately at the border are subject to" but a form of parole. (ECF No. 8 ("Traverse"), at 2.) Yet the parties do not provide documentation that shows which parole the Petitioner was given. Without the usual exhibits attached with habeas petitions—a Notice to Appear, employment authorization forms or identification cards, an Order of Release on Recognizance, or ICE records of inadmissibility—the Court cannot determine whether the Petitioner received humanitarian or conditional parole.

Because the Court cannot determine whether the Respondent's revocation of parole violated a particular statute or regulation, the Petitioner's first claim is denied without prejudice. *See Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In . . . federal habeas proceedings, it is the petitioner who bears the burden of proving his case.").

**B.    Due Process Parole Rights**

The Fifth Amendment entitles noncitizens[1] "to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Once a noncitizen "passe[s]

---

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien." 8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

26-cv-1130

through our gates," he may be removed "only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process also "protects noncitizens from unlawful detention during their removal proceedings." *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Here, the Petitioner challenges the revocation of his parole, regardless of which parole he was given, and his current detention as contrary to his due process rights.

To determine the "specific dictates of due process" in this situation, the Court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Court adopts the reasoning in the decisions *Noori v. LaRose*, 807 F. Supp. 3d 1146 (S.D. Cal. 2025), and *Esquivel Pacheco v. LaRose*, 2026 WL 242300 (S.D. Cal. Jan. 29, 2026), and applies it here.

First, the Petitioner acquired a protectable interest in being free from imprisonment once he was paroled into the country. The record does not specify the Respondent's reason for granting him parole. But by exercising his discretion to do so, the Respondent made "at least an implicit promise that parole will be revoked only if [the Petitioner] fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Petitioner relied on that promise and complied with his reporting conditions for the year and a half he lived in the country. This created a "protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees." *Noori*, 807 F. Supp. 3d at 1165. That expectation of due process extends to his parole revocation.

Second, the Respondent's process of revoking the Petitioner's parole created a substantial risk that the Petitioner's liberty interest would be erroneously deprived. The

26-cv-1130

Petitioner was given no prior notice that he would be placed under arrest. He was provided no paperwork or explanation for the arrest. He was merely told that the new administration would send him to "a quick proceeding" because he wasn't a permanent resident. And when the Petitioner attempted to rebut the revocation of his parole, he was told he was resisting arrest. The record contains no indication that the Respondent arrested the Petitioner because he failed to report as ordered or had become a danger or flight risk that needed to be detained. Rather, it appears the Respondent "breached the 'implicit promise' made to Petitioner that he would enjoy this liberty as long as he did nothing to forfeit it." *Esquivel Pacheco*, 2026 WL 242300, at *6.

Third, the Respondent has not demonstrated a significant interest that justifies maintaining his current procedures. The Court acknowledges that sending a notice to appear or holding a predeprivation hearing "poses some degree of 'fiscal and administrative burden.'" *Esquivel Pacheco*, 2026 WL 242300, at *6 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Yet that burden must be balanced against the Petitioner's liberty interest and the procedural protections afforded that interest. Taken together, the Petitioner's interest outweighs the Respondent's.

The Petitioner entered the country on parole and was ordered to adhere to the conditions of that parole. In turn, "it cannot be too much to expect the government to turn square corners when it deals with" him. *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). The Respondent violated the Petitioner's due process rights by "detaining [him] without justification." *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1158 (D. Minn. 2025). The Respondent does not allege that Wang is a danger to the community or a flight risk or that he violated the conditions of his parole. The writ must issue to release him from custody. The petition is granted on the second claim.

## C.     Bond Hearing

The Court grants relief on the Petitioner's second claim and need not reach the Respondent's argument that he is entitled to a bond hearing under Section 1226(a). The Court also need not reach the arguments raised in oppositional briefs that the Respondent

26-cv-1130

"incorporates by reference." (Return, 4 n.2.) "Arguments raised only in footnotes, or only on reply, are generally deemed waived." *Est. of Saunders v. Comm'r of Internal Revenue*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).

## III.    CONCLUSION

The petition for a writ of habeas corpus is **GRANTED** on the second claim and the writ is **ISSUED**. The Respondent shall immediately release Wang from custody on his preexisting conditions. The first claim is **DENIED** without prejudice. The parties shall file a statement as to the satisfaction of the writ by March 20, 2026, at 5 p.m. The Court retains jurisdiction to enforce the writ.

**IT IS SO ORDERED.**

Dated:  March 18, 2026

Honorable Barry Ted Moskowitz
United States District Judge

26-cv-1130